IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBERT COATS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:21-cv-4159-MDH |
| ) | |
| KRAFT HEINZ FOODS CO., et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendant Bill Kersey's Motion to Dismiss (Doc. 10); Kraft Heinz's Motion to Dismiss (Doc. 12); and Plaintiff's Motion to Remand (Doc. 16). Defendant Kraft Heinz removed Plaintiff's Petition to this Court from Boone County, Missouri. Defendant's Notice of Removal indicates Plaintiff's petition asserts six counts: Count One - race discrimination against Kraft Heinz under the Missouri Human Rights Act ("MHRA"); Count Two - color discrimination against Kraft Heinz under the MHRA; Count Three - retaliation against Kraft Heinz under the MHRA; Count Four - negligent hiring, supervision, and/or retention against Kraft Heinz under Missouri common law; Count Five - negligent infliction of emotional distress ("NIED") against Kraft Heinz and Kersey under Missouri common law; and Count Six - intentional infliction of emotional distress ("IIED") against Kraft Heinz and Kersey under Missouri common law. Defendant Kraft Heinz alleges removal is appropriate pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship and that Kersey's citizenship should be disregarded because he has been fraudulently joined. The Notice of Removal asserts that the two claims brought against Kersey, the NIED claim and the IIED claim, are not colorable and should be dismissed.

Defendant Kersey has also filed a Motion to Dismiss raising the same arguments – that the two claims brought against him fail to state a claim pursuant to Rule 12(b)(6). Both Plaintiff's

Motion to Remand and opposition to the motion to dismiss argue that Kersey has not been fraudulently joined and that the claims should proceed and the case should be remanded.

## STANDARD

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. The reviewing court must read the complaint as a whole rather than analyzing each allegation in isolation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## ANALYSIS

**Kersey's Motion to Dismiss**

Plaintiff makes the following specific allegations against defendant Kersey:

¶ 20 On or around June 7, 2020, Plaintiff was in a breakroom at the facility when, Defendant Kersey, a white employee assigned to "C-team", entered the breakroom and said "what's up nigga."

¶ 21 Immediately after this incident, Plaintiff made a formal report alleging that he was being subjected to a hostile work environment.

2

¶ 22  Defendant Kersey admitted that he made the comment and was suspended for a period of three (3) days, after which he returned to the workplace.

¶ 23  Plaintiff believed that under Defendant Kraft Heinz's policies, Defendant Kersey would be fired.

¶24  When Plaintiff learned that Defendant Kersey's employment had not been terminated, he continued avoiding overtime shifts with "C-team."

Plaintiff has named Kersey in Count Five – Negligent Infliction Of Emotional Distress - alleging: that the facts of the above-described occurrence(s) and the reasonable inferences therefrom demonstrate that such occurrences were directly caused by Kersey's failure to use a degree of care that an ordinarily careful person would use under the same or similar circumstances and were thereby negligent. Plaintiff claims Kersey knew, or by using ordinary care, should have known, that such negligence involved an unreasonable risk of causing emotional distress to Plaintiff and as a direct and proximate result of the extreme and outrageous conduct of Defendant Kersey in calling Plaintiff a "nigga" Plaintiff suffered and continues to suffer severe emotional distress.

In Count Six - Intentional Infliction Of Emotional Distress - Plaintiff alleges: Kersey's conduct described herein was extreme and outrageous conduct which has caused physical and emotional harm to Plaintiff. Defendant Kersey intentionally or recklessly acted in an extreme and outrageous manner by causing unwanted, unlawful, and offensive communication with Plaintiff; he either intended to cause or recklessly caused extreme emotional distress to Plaintiff; and his conduct was so outrageous and extreme in degree that it goes beyond all bounds of decency, and is to be regarded as atrocious, and utterly intolerable in a civilized community.

First, to prevail on an NIED claim under Missouri law, Plaintiff must establish duty, breach, cause, and injury - along with two additional elements: 1) that the defendant should have

3

Case 2:21-cv-04159-MDH   Document 22   Filed 12/13/21   Page 3 of 10

realized his conduct involved an unreasonable risk of causing distress, and 2) the resulting emotional distress or mental injury is medically diagnosable and of sufficient severity so as to be medically significant. *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–73 (Mo. 1983) (en banc).

Missouri law provides that co-employees owe one another a personal duty of care in "the prosecution of their work" under certain circumstances. *Logsdon v. Duncan*, 293 S.W.2d 944, 949 (Mo. 1956). However, Kersey argues that there is no basis for the proposition that co-workers, merely as a function of their status as co-workers, owe a personal duty of care to one another while they are not actively performing their job duties.

Under Missouri law, a duty may also arise when there is a foreseeable likelihood that the defendant's acts or omissions will cause harm or injury. *Millard v. Corrado*, 14 S.W.3d 42, 47 (Mo. Ct. App. 1999). However, a duty only exists on this basis "[i]f, under the circumstances, a reasonably prudent person would have anticipated danger and provided against it." *Id.* Kersey cites a list of cases rejecting NIED claims premised on the argument that a duty existed because of a foreseeable injury. *See e.g., Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001) (no duty where plaintiff sued his wife's employer and boss for NIED because the plaintiff's wife had an affair with her boss, which was eventually publicized in the workplace, causing the wife to move out of town with the couple's children).

Here, Plaintiff alleges Kersey made an offensive comment in the breakroom. The Court finds this conduct, although reprehensible, does not fall under a duty owed by Kersey to Plaintiff. This remark, while clearly offensive and subjecting Kersey to punishment by his employer, does not rise to the level of conduct to create a cause of action against Plaintiff's co-worker under Missouri law.

Further, to prevail on an IIED claim Plaintiff must show: 1) the defendant's conduct was extreme and outrageous, 2) the conduct was intentional or done recklessly, and 3) the conduct caused severe emotional distress that resulted in bodily harm. *Thornburg*, 62 S.W.3d at 427. In addition, the "sole purpose" of the defendant's conduct must have been to cause extreme emotional distress. *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (en banc).

Again, Plaintiff alleges Kersey made a single offensive remark to him in the breakroom at work. As the Court previously stated, while the racial slur is reprehensible, under Missouri law the alleged conduct does not meet the definition of "extreme and outrageous."[1] Under Missouri law, for Plaintiff to meet this threshold the alleged conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Warrem v. Parrish*, 436 S.W.2d 670, 673 (Mo. 1969). Missouri courts have found that "liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." See *Viehweg v. Vic Tanny Int'l of Mo., Inc.*, 732 S.W.2d 212, 213 (Mo. Ct. App. 1987).

In addition, the Eighth Circuit has stated:

> Liability for IIED clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

*Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 310 (8th Cir. 2009) ("Missouri case law reveals very few factual scenarios sufficient to support a claim for [IIED].") (internal citation omitted);

---

[1] Plaintiff clearly disagrees with the discipline imposed on Kersey for the offensive racial slur, however that alone does not rise to the degree of extreme and outrageous behavior required to pursue a claim for IIED.

5

quoting *Dunham v. City of O'Fallon*, 945 F. Supp. 1256, 1262 (E.D. Mo. 1996)); and *Kansas v. Telecomm*, 252 F. App'x 100, 104 (8th Cir. 2007) ("Rarely is a defendant's conduct sufficiently extreme and outrageous enough to warrant recovery.") (internal citation omitted).

Here, the Court finds Plaintiff's claims against his co-worker fail to state a claim that can survive a motion to dismiss. While Plaintiff's allegations contain offensive remarks that should not be tolerated in the workplace, his allegations against this co-worker fail to state a claim under Missouri law. The Court **GRANTS** the Motion to Dismiss defendant Kersey. (Doc. 10).

**Kraft Heinz's Motion to Dismiss**

Defendant Kraft Heinz moves to dismiss Count Four – negligent hiring, supervision and/or retention, Count Five – NIED, and Count Six - IIED.

Plaintiff's petition against Kraft Heinz alleges he is an African American male who began working for Kraft Heinz in June of 2019. Plaintiff alleges that in March 2020, he overheard his co-workers use the word "coon" in the breakroom. Plaintiff alleges after hearing this language, he began to give away some of his shifts in order to avoid contact and potential conflict with those co-workers. Plaintiff contends that his supervisor noticed he was avoiding overtime shifts and when he confronted Plaintiff about the overtime shifts Plaintiff told him he was giving away shifts in an attempt to avoid "the hostile work environment and racism he experienced in the break room." Plaintiff alleges Kraft Heinz took no action after he reported his concern to his supervisor. In June 2020, Plaintiff alleges that someone wrote a racially offensive term on another African American employee's locker.

Plaintiff also specifically states, as discussed above, that defendant Kersey entered the breakroom and used a racially offensive term when greeting Plaintiff. Based on Defendant Kersey's comment, Plaintiff submitted a formal report complaining of a hostile work environment.

6

Case 2:21-cv-04159-MDH   Document 22   Filed 12/13/21   Page 6 of 10

Plaintiff states that Kraft Heinz issued Kersey a three-day suspension for his comment in the breakroom but did not terminate Kersey. As a result, Plaintiff began avoiding overtime shifts to avoid Kersey. Plaintiff further alleges that Kraft Heinz eventually asked him to stop trading his shifts, at which time Plaintiff asked to be transferred to a different team. Kraft Heinz denied his request and Plaintiff warned his employer that "it would be difficult for him to control his reaction if Defendant Kersey or any other employee . . . used a racial slur in front of him again." Plaintiff then alleges that Kraft Heinz suspended Plaintiff for threatening to use violence against co-workers and that he was ultimately terminated.

First, Defendant argues Plaintiff's Counts Four, Five and Six are preempted by the Missouri Workers' Compensation Act ("the Act"). Counts Five and Six bring claims of intentional and negligent infliction of emotional distress. The Court finds these claims against Kraft Heinz are barred by the Workers' Compensation Act. See *Hardebeck v. Warner-Jenkinson Co.*, 108 F. Supp. 2d 1062, 1065 (E.D. Mo. 2000) (finding that the Workers' Compensation Act bars a suit by a plaintiff against her employer for intentional and negligent infliction of emotional distress).

> In cases in which plaintiffs have filed claims under Title VII and/or the MHRA as well as common law tort claims for intentional and/or negligent infliction of emotional distress, courts have consistently dismissed the common-law tort claims as being preempted by the Missouri Workers' Compensation Act. *See e.g., McAlinney v. Marion Merrell Dow, Inc.*, 992 F.2d 839 (8th Cir.1993) (trial court considered the Missouri Human Rights Act claim and Title VII claim but had dismissed prior to trial both state law claims concerning emotional distress as preempted by the Missouri Workers' Compensation Act); *Nichols v. American National Insurance Company*, 945 F.Supp. 1242 (E.D. Mo.1996) (dismissing the plaintiff's claim of intentional infliction of emotional distress as being barred by the Missouri Workers' Compensation Law, in case where the plaintiff also asserted a Title VII claim); *Whitmore v. O'Connor Management, Inc.*, 899 F.Supp. 425 (W.D. Mo.1995) (dismissing the plaintiff's common law tort claim of intentional infliction of emotional distress as being preempted by the Missouri Workers' Compensation Act, while retaining jurisdiction over the Title VII and MHRA claims); *Russell v. City of Overland Police Department*, 838 F.Supp. 1350, 1353 (E.D.Mo.1993) (granting the defendant's motion to dismiss state law claim of intentional infliction of emotional distress as barred by the Missouri Workers' Compensation Act in case

> where the plaintiff also had a Title VII claim pending); and *Jen v. Electronic Data Systems, Corp.*, 1993 WL 246327 (E.D.Mo. June 1993) (dismissing the plaintiff's claims of intentional and negligent infliction of emotional distress as being barred by the Missouri worker's compensation law in a case where the plaintiff had also filed claims of violations of Title VII and the MHRA).

*Id.*

Here, Plaintiff's claims for negligent and intentional infliction of emotional distress are dismissed because they are barred by the Act. Plaintiff's argument that Kraft Heinz is liable through the doctrine of vicarious liability for these claims is without merit. Counts Five and Six are dismissed.

Count Four brings a claim for negligent hiring, supervision, and/or retention. Plaintiff alleges Kraft Heinz had a duty to supervise its employees and protect Plaintiff from an unreasonable risk of racial discrimination and that it breached its duty. This is also a common law cause of action that would be preempted by the Act. See *Hardebeck v. Warner-Jenkinson Co* 108 F. Supp. 2d 1062, 1065 (E.D. Mo. 2000).

In addition, the claim for negligent hiring, supervision, and/or retention would also be preempted by the MHRA. See *Ritter v. Delta Sch. Dist.,* No. 1:18 CV 170 ACL, 2019 WL 2027725, at *3 (E.D. Mo. May 8, 2019) (holding plaintiff's common law failure to supervise claim was preempted by the MHRA and granting the motion to dismiss). The MHRA "shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." *Winfrey v. Ford Motor Co*., No. 4:19-CV-00889-DGK, 2020 WL 1558117, at *2 (W.D. Mo. Apr. 1, 2020), reconsideration denied, No. 4:19-CV-00889-DGK, 2020 WL 5541081 (W.D. Mo. Aug. 20, 2020), aff'd, 842 F. App'x 5 (8th Cir. 2021); citing Mo. Rev. Stat. § 213.070.2. Here, Plaintiff's claims for intentional and/or negligent infliction of emotional distress and failure to supervise all arise out of his employment relationship with Kraft Heinz. Further, all his claims

arise from the same factual allegations underlying both his MHRA claims and his common law tort claims. Therefore, Plaintiff's common law claims are preempted by the MHRA. *Id.*, citing *State ex rel. Church & Dwight Co. v. Collins*, 543 S.W.3d 22, 27 (Mo. banc 2018) (holding the MHRA "supersedes and displaces ... common law claims" because it "provides a fully comprehensive remedial scheme enveloping the remedies available for the common law claims.").

Here, Plaintiff's MHRA claims, Counts One, Two, and Three, provide the same remedies that would be available pursuant to his common law claims. The MHRA, therefore, supersedes and displaces Plaintiff's common law claims. Plaintiff's Counts Four, Five and Six are dismissed. Plaintiff's claims under the MHRA, Counts One, Two, and Three, remain and include the allegations and remedies sought by Plaintiff for his employment claims.

**Plaintiff's Motion to Remand**

This case was removed pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship between Plaintiff and defendant Kraft Heinz. Based upon the Court's ruling that individual defendant Kersey shall be dismissed for the reasons stated herein, his citizenship for purposes of diversity is disregarded and the Court finds diversity exists between Plaintiff and Kraft Heinz. As a result, the case has been properly removed. Plaintiff's Motion to Remand is **DENIED.** (Doc. 16).

## CONCLUSION

For the reasons set forth herein, the Court **GRANTS** the Motion to Dismiss defendant Kersey (Doc. 10); the Court **GRANTS** Kraft Heinz's Motion to Dismiss Counts Four, Five and Six (Doc. 12); and the Court **DENIES** Plaintiff's Motion to Remand (Doc. 16). Plaintiff's claims as alleged in Counts One, Two and Three remain.

9

Case 2:21-cv-04159-MDH   Document 22   Filed 12/13/21   Page 9 of 10

**IT IS SO ORDERED**.

Dated:  December 13, 2021                                  */s/ Douglas Harpool*
                                                                                **DOUGLAS HARPOOL**
                                                                                **UNITED STATES DISTRICT JUDGE**